Paul R.J. Connolly, OSB #844090
paul@connollypc.com
Kevin J. Jacoby, OSB #063783
kevin@connollypc.com
Tyler P. Malstrom, OSB #094325
tyler@connollypc.com
2731 Twelfth St. SE
PO Box 3095
Salem, OR 97302
Phone: (503) 585-2054
Fax: (503) 584-7037
        Of Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| NEAL A. HAUSAM,<br><br>        Plaintiff,<br><br>    v.<br><br>HOMECOMINGS FINANCIAL, LLC;<br>GMAC MORTGAGE, LLC; MORTGAGE<br>ELECTRONIC REGISTRATION<br>SYSTEMS, INC.; LSI TITLE OF OREGON,<br>LLC; and EXECUTIVE TRUSTEE<br>SERVICES, LLC,<br><br>        Defendants. | Case No. _____<br><br>COMPLAINT<br>1.  Breach of Contract - Implied<br> Provision<br>2.  Breach of Contract - Third Party<br>Beneficiary<br>3.  Breach of Oral Contract<br>4.  Equitable Estoppel<br>5.  Promissory Estoppel<br>6.  Breach of Good Faith and Fair<br>Dealing<br>7.  Accord and Satisfaction<br>8.  Payment<br>9.  Unclean Hands<br>10. Estoppel<br><br>Jury Trial Requested. |

/ / /

/ / /

/ / /

Page 1 - COMPLAINT

Plaintiff Neal A. Hausam alleges:

## <u>SUMMARY OF THE ACTION</u>

1.      There is currently an historical economic downturn in the United States, resulting in widespread financial hardship of homeowners.

2.      Due to homeowners' loss of property value and inability to make monthly mortgages, rates of foreclosures have skyrocketed, which in turn has created a credit crunch, caused a decline in value of neighboring properties, and invited problems like litter, dumping, vagrancy, and vandalism.

3.      As an initial response to the national housing crisis, on October 3, 2008, the federal government enacted the Emergency Economic Stabilization Act of 2008 ("Act"), which created the Troubled Asset Relief Program commonly known as TARP. One stated purpose of the Act was to preserve home ownership. 12 U.S.C. 5201(2)(B). Under the Act, the Secretary of the Treasury Department was directed to "implement a plan to maximize assistance for homeowners" and "facilitate loan modifications to prevent avoidable foreclosures." 12 U.S.C. 5219(a)(1).

4.      The Obama Administration announced the Making Home Affordable Program on February 18, 2009, which was created to help millions of homeowners restructure or refinance their mortgages to avoid foreclosure, thereby helping to stabilize the U.S. housing market. Under this Plan, the Treasury Department created the Home Affordable Modification Program ("HAMP") and issued uniform guidelines for mortgage modifications nationally.

5.      The purpose of HAMP is to offer assistance to millions of borrowers by reducing monthly mortgage payments and preventing avoidable foreclosures.

6.      The federal government, through the Federal National Mortgage Association ("Fannie Mae"), obtained agreements with mortgage lenders and servicers to provide

Page 2 - COMPLAINT

homeowners with foreclosure relief through modified mortgages, in accordance with HAMP, in exchange for receipt of federal TARP funds. The TARP funds are intended to realign incentives so that mortgage lenders and servicers will be financially motivated to modify mortgages rather than foreclose.

7.    This is a case in which a member of the public who is intended to benefit from the HAMP program has been deprived of his right to avoid foreclosure, notwithstanding his eligibility for a mortgage modification under HAMP and his mortgage servicer, GMAC, signing an agreement with the federal government to do so in exchange for TARP money.

8.    This suit is to effectuate the intent of the federal government to stabilize the U.S. housing market and provide relief to struggling homeowners by stopping the foreclosure that is now scheduled for December 7, 2009.

## <u>JURISDICTION,  VENUE AND DIVISIONAL VENUE ASSIGNMENT</u>

9.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 for the reason that there is complete diversity between the Plaintiff and the Defendants and the amount in controversy exceeds $75,000.

10.    Venue in this District is proper pursuant to 28 U.S.C. §1391 because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in, and a substantial part, or all, of the property that is the subject of this action is located in Salem, Oregon in Polk County.

11.    Assignment to this Division of this Court is proper pursuant to Local Rule 3-2(a) because a substantial part of the events or omissions that give rise to claims alleged in this Complaint occurred in, and a substantial part, or all, of the property that is the subject of this action is located in Salem, Oregon in Polk County.

/ / /

/ / /

Page 3 - COMPLAINT

## PARTIES

12.     Plaintiff Neal A. Hausam ("Hausam") is a seventy-year-old resident of Polk County Oregon. At all material times, his residence is located in Polk County, Oregon, and the loan and trust deed at issue are related to his residence in Polk County, Oregon. The house is an owner-occupied, single-family residence that Hausam has owned for twenty-six years.

13.     Defendant Homecomings Financial, LLC ("HF") is, upon information and belief, a residential financial institution that is organized and existing under the laws of Delaware, with a principal place of business other than the State of Oregon. Upon information and belief, HF is a subsidiary of Residential Capital, LLC, which itself is an indirect wholly owned subsidiary of GMAC Financial Services.  At all material times, HF is listed as the "beneficiary" for the trust deed that is the subject of this litigation.

14.     GMAC Mortgage, LLC ("GMAC") is, upon information and belief, a residential mortgage lender that is organized and existing under the laws of Delaware, with a principal place of business other than the State of Oregon. Upon information and belief, GMAC is a subsidiary of Residential Capital, LLC, which itself is an indirect wholly owned subsidiary of GMAC Financial Services. On June 10, 2009, GMAC notified Plaintiff that "the servicing of [the note and mortgage at issue in this case] is being assigned, sold, or transferred from Homecomings Financial, LLC * * * to GMAC Mortgage, LLC[,] effective July 1, 2009." The letter also stated, "Please note that GMAC Mortgage and Homecomings Financial are affiliated companies. The only change to your mortgage account will be the name of your loan servicer."

15.     Mortgage Electronic Registration Systems, Inc. ("MERS") is, upon information and belief,  a residential mortgage loan registrar that is organized and existing under the laws of Delaware, with a principal place of business other than the State of Oregon. At all material times, MERS acts as the "nominee" for the beneficiary HF for the trust deed that

Page 4 - COMPLAINT

is the subject of this litigation..

16.    Defendant LSI Title of Oregon, LLC ("LSI") is, upon information and belief, an Oregon LLC whose sole member, LSI Title Agency, Inc. is organized  and existing under the State of Illinois with its principal place of business in the State of Florida. On July 16, 2009, LSI was appointed as successor trustee under the trust deed and replaced LandAmerica Lawyers Title LLC.

17.    Defendant Executive Trustee Services, LLC ("ETS") is, upon information and belief, a foreclosure trustee company that is organized and existing under the State of Delaware with its principal place of business in the State of California. Upon information and belief, ETS is affiliated with GMAC Mortgage to act as trustee for GMAC's non-judicial foreclosures. All correspondence and notices received from the trustee under the trust deed has been through ETS at their California address, not LSI. Plaintiff has also received correspondence listing ETS as the trustee under the trust deed that is the subject of this litigation, including but not limited to, the Debt Validation Notice accompanying the Trustee's Notice of Sale sent on August 3, 2009.

## **COMMON FACTUAL ALLEGATIONS**

### **I.**

### **Trust Deed**

18.    Plaintiff has been the owner of property and house located at 2054 Mousebird Avenue  NW, Salem, Oregon 97304. On June 19, 2007, Hausam gave a deed of trust to Defendant HF on his residence to secure a promissory note in the amount of $264,000.

19.    The monthly payments of interest-only was $1,512.50 for the first 120 months of the note, and thereafter would be $2,027.03 per month.

/ / /

/ / /

Page 5 - COMPLAINT

## II.

## Default

20.     Due to financial hardships, Hausam was unable to make his March 1, 2009 monthly payment to HF. That same month, Hausam contacted HF to discuss the possibility of a modification of the loan terms under the Obama Administration's "Home Affordable Modification Program" ("HAMP") due to his financial hardship.

## III.

## Eligibility for HAMP and Attempts to Modify Mortgage

## A.

## Application for HAMP Modification

21.     On March 17, 2009, HF forwarded a "Financial Analysis Form" instructing Hausam to complete the form and submit it for qualification for HAMP.

22.     On April 6, 2009, Hausam returned the completed "Financial Analysis Form." On April 14, 2009, Hausam supplemented the "Financial Analysis Form" with copies of his Social Security checks and a rental check he received from the tenants at a restaurant that he owns. This submission completed Hausam's application for a HAMP modification of his mortgage. The materials submitted establish Hausam's qualification to be accorded a modified loan agreement by which he could pay 31% of his gross monthly income.

23.     On April 30, 2009, HF sent a letter asking Hausam to return the "Financial Analysis Form" and documents for their review of his eligibility. Hausam had already completed and submitted the requested form and supplemental information.

24.     On June 9, 2009, an authorized representative of HF informed Hausam that HF had begun reviewing his application for a HAMP mortgage modification on May 26, 2009, and that HF would take 40-60 days to approve his application.

25.     On June 22, 2009, Plaintiff submitted the Financial Analysis Form to HF again to

Page 6 - COMPLAINT

ensure there were no omitted items on the form.

26.     On July 2, 2009, GMAC wrote Plaintiff a letter stating that GMAC had "reviewed your mortgage account and determined that you may qualify to refinance your current loan with a new lower rate." The letter further stated that when Plaintiff called his mortgage lender, a "Loan Agent" would "confirm your eligibility[, a]nd if you're eligible, I'll provide a rate quote and you'll be able to start your application right over the phone."

**B.**

**Agreement to Modify Mortgage**

27.     On July 10, 2009, Plaintiff spoke with a duly authorized representative of HF who informed Hausam that HF had determined that Hausam qualified for a modified mortgage under HAMP. HF's agent confirmed that HF had received the most recent fax on June 22, 2009, and also sought more information about Hausam's current financial situation. He also told Hausam that HF would modify the mortgage to approximately $1,300 per month, to include principal, interest, taxes, and insurance.

28.     On July 10, 2009 and on July 13, 2009, Plaintiff forwarded supplemental information requested by HF. The documents and statements made by Hausam indicated that he qualified for a mortgage modification under HAMP.

29.     On July 21, 2009, a duly authorized representative of HF told Plaintiff to the effect that he had been approved for the modified mortgage and that the modified loan amount would be $1,311.92. This amount was 31% of Plaintiff's monthly gross income. Hausam agreed to pay this amount.

30.     In that same conversation, Hausam was led to believe that the only step that remained was to memorialize the loan modification and that the lender would prepare and forward to him the necessary paperwork. Hausam understood that once this paperwork was  received and signed, he would forward the payment for $1,311.92 to HF to be placed

Page 7 - COMPLAINT

in an escrow account in order to avoid any foreclosure.

## IV.

## Initiation of Foreclosure

31.     On July 16, 2009, unbeknownst to Hausam, HF signed and commenced a Trustee's Notice of Sale based on an alleged default of Hausam's obligation to pay. On August 3, 2009, ETS sent by certified mail a Trustee's Notice of Sale, which Hausam received on August 6, 2009. A copy of this Notice of Sale is attached as Exhibit 1. The Notice states that a foreclosure sale of Hausam's residence will occur on December 7, 2009.

## V.

## Attempts to Pay Mortgage

32.     On August 12, 2009, Hausam mailed a personal check in the amount of $1,311.92 to HF in accordance with HF's instructions to modify the mortgage. With the check, Hausam included a letter explaining his understanding that "this payment is to stop foreclosure action and it is to be put into an escrow account pending the closure of a refinancing."

33.     On August 19, 2009, HF acknowledged receiving the check and cashing it.

34.     On August 31, 2009, Hausam received a letter from GMAC instructing him to submit his most recent payment of income and to resubmit his application for mortgage modification.

35.     On September 4, 2009, Hausam submitted the requested information yet again, and forwarded a second personal check in the amount of $1,311.92 to HF.

36.     On September 15, 2009, GMAC returned the second personal check, purportedly because the check had not been paid in the form of certified funds. GMAC did not cite any other basis for returning this payment.

37.     On September 30, 2009, Hausam forwarded a certified check in the amount of

Page 8 - COMPLAINT

$1,311.92 to HF, pursuant to the instructions in the September 15, 2009 letter.

38.     On October 8, 2009, GMAC cashed the certified check sent on September 30, 2009.

39.     On October 13, 2009, Hausam forwarded a second certified check in the amount of $1,311.92 to HF.

40.     On October 22, 2009, GMAC returned the second certified check. The letter accompanying the returned letter states, "These funds do not represent the full amount due to reinstate your account at this time." The letter further states, "Your account has been transferred to our attorney to begin foreclosure proceedings." In addition, the letter states as follows:

> "If you cannot afford to reinstate your mortgage, there may be alternatives available to help you avoid foreclosure. Contact the Loss Mitigation Department at GMAC Mortgage, LLC immediately at 800-850-4622 to discuss these options."

41.     On October 28, 2009, Hausam redeposited the returned mortgage payment into his bank account. Hausam paid into a trust account the monthly mortgage payments due for the third trial period payment due in October 2009, and the first permanent modification payment due in November 2009. Hausam remains ready, willing, and able to make such payment and any subsequent payments to GMAC for the restructured amount of $1,311.92 per month upon GMAC's full performance of their contractual obligations.

## VI.

## Demands to Postpone Trustee Sale

42.     To date, Hausam has never received any written notice from HF or GMAC that his application for loan modification is deficient, or that Hausam is not eligible for a mortgage modification under HAMP.

43.     Hausam has repeatedly attempted to contact HF and GMAC to advise them of his

Page 9 - COMPLAINT

completed application, his negotiated mortgage modification, and their receipt of payments. None have acted upon these calls.

44.     On November 17, 2009, counsel for Hausam forwarded a demand letter to LSI, ETS, HF, and GMAC, asking for relief by cancelling the foreclosure because Hausam is eligible for, applied for, and was orally granted a mortgage modification in accordance with HAMP. Counsel for Hausam forwarded a second demand letter to LSI and ETS on November 23, 2009. No substantive response has been received.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract - Implied Provision)

45.     The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

46.     On April 13, 2009, Defendant GMAC, as a mortgage servicer, entered into a contract with the Federal National Mortgage Association ("Fannie Mae"), a federally chartered corporation and financial agent of the United States,  entitled "Commitment to Purchase Financial Instrument and Servicer Participation Agreement for the Home Affordable Modification Program under the Emergency Economic Stabilization Act of 2008" (the "Contract").

47.     Under the contract, as a condition precedent to receiving federal money under the Troubled Asset Relief Program ("TARP"), GMAC must provide mortgage relief to individuals in Hausam's situation, i.e., individuals who are in need of a loan modification and meet the eligibility requirements.

48.     The contractual obligations created by the Contract extend to Defendant HF and trust deeds originated by HF as beneficiary, for the following reasons: (1) HF and GMAC are, by their own description, "affiliated companies," and are both subsidiaries of Residential Capital, LLC, who itself is an indirect wholly owned subsidiary of GMAC Financial Services; (2) on June 10, 2009, GMAC sent  notice to Hausam stating that "the

Page 10 - COMPLAINT

servicing of [the note and mortgage at issue in this case] is being assigned, sold, or transferred  from Homecomings Financial, LLC * * * to GMAC Mortgage, LLC[,] effective July 1, 2009; (3) HF itself states that it is "A GMAC Company" on correspondence with Plaintiff.

49.     Therefore, Defendants HF and GMAC are bound by the terms of Defendant GMAC's Contract with the federal government, and have a contractual obligation not to breach those terms.

50.     In accordance with Section 1 of the Contract, the terms of the Contract include by incorporation "Supplemental Directives" and "HAMP Program Documentation" issued by the Treasury, Fannie Mae, or Freddie Mac after the initial Contract was signed.

51.     As a part of the "HAMP Program Documentation" described in Section 1 of the Contract, "Supplemental Documentation - Frequently Asked Questions, Home Affordable Modification Program" was issued by the Treasury on November 12, 2009. A copy of the November 12, 2009 Supplemental Documentation is attached as Exhibit 2. This Documentation clarifies that the following requirements are binding terms of the Contract:

   a.     "Participating servicers are required to validate the homeowner's eligibility for HAMP and capacity to pay." (Q3, p.2).

   b.     "Foreclosure actions[ * * * ,] including initiation of new foreclosure actions, must be postponed for all borrowers that meet the minimum HAMP eligibility criteria." (Q3, p.2)

   c.     "[A]ny foreclosure sale must be suspended and no new foreclosure action may be initiated during the trial period. Foreclosure actions may not be initiated or restarted until the borrower has failed the trial period and the borrower has been considered and found ineligible for other available foreclosure prevention options." (Q63, p.14).

Page 11 - COMPLAINT

52.    The Contract added implied provisions to Plaintiff's loan agreement for the mortgage serviced by GMAC, including the requirements of HAMP to modify mortgages and prevent foreclosure.

53.    As a result, Defendants had an affirmative duty to act in accordance with the implied provisions once the duty was triggered. This affirmative duty included completing the necessary steps to modify Plaintiff's mortgage in accordance with HAMP, and to prevent foreclosure.

54.    Plaintiff triggered that affirmative duty by meeting the eligibility requirements for HAMP.

55.    Plaintiff further triggered the affirmative duty by contacting Defendant HF about modifying his mortgage under HAMP, completing and submitting the application and supporting documents to qualify for a HAMP modification, negotiating a trial modification, and succeeding the trial period by paying the modified mortgage amount.

56.    Defendant HF, and by affiliation, GMAC, agreed to modify Plaintiff's mortgage.

57.    Defendants HF and GMAC thereby amended the loan agreement.

58.    GMAC and/or HF breached the terms of the Contract in the following ways:

a.    By failing to send the forms documenting Plaintiff's newly modified mortgage as agreed on July 21, 2009.

b.    In the alternative, by failing to send the forms documenting Plaintiff's trial modification as agreed and commenced on July 21, 2009.

c.    In the alternative, by failing to process Plaintiff's submitted application and supporting documents to determine his eligibility for a mortgage modification under HAMP.

d.    In the alternative, by failing to inform Plaintiff whether he was eligible for a mortgage modification under HAMP.

Page 12 - COMPLAINT

e.     In the alterative, by disallowing Plaintiff's trial modification from becoming a permanent modification by rejecting his third timely payment of the modified mortgage amount, which was the final payment before Plaintiff qualified to convert his trial modification into a permanent mortgage modification.

f.     In the alternative, by failing to modify Plaintiff's mortgage despite his eligibility for HAMP and his compliance with all the requirements of HAMP.

g.     In the alternative, by initiating a foreclosure despite Plaintiff's eligibility and application for a mortgage modification under HAMP.

h.     In the alternative, by refusing to postpone a foreclosure despite Plaintiff's eligibility and application for a mortgage modification under HAMP and his compliance with all trial period requirements.

59.     In accordance with the implied provisions incorporated by the Contract, Defendants HF and GMAC breached the amendment to the loan agreement by rejecting payment by Hausam, denying him mortgage relief, initiating foreclosure, and refusing to postpone foreclosure.

60.     Plaintiff has no adequate remedy at law.

61.     Injunctive relief is appropriate. Plaintiff seeks a decree from the Court directing each Defendant as follows:

a.     Cancelling or enjoining the Trustee's sale scheduled for December 7, 2009.

b.     Reforming and modifying of the Trust Deed and Promissory Note to reflect monthly payments of $1,311.92 in accordance with HAMP and to reflect a payment schedule of principal and interest in accordance with HAMP.

c.     Cancelling of all fees and costs related to the initiated foreclosure action.

d.     Complying with all provisions of HAMP, federal law, and state law.

e.     Such relief as equity dictates.

Page 13 - COMPLAINT

62.     The Trust Deed and Promissory Note provide for the award of attorneys fees to the lender and beneficiary HF. Pursuant to ORS 20.096, any fees should be awarded to Plaintiff as the prevailing party.

## SECOND CLAIM FOR RELIEF

### (Breach of Contract - Third Party Beneficiary)

63.     The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

64.     The general purpose and intent of the federal government as promisee in entering the Contract with GMAC was to stabilize the U.S. housing market and offer assistance to millions of struggling homeowners by reducing homeowners' mortgage payments and preventing avoidable foreclosures.

65.     Therefore, donee beneficiaries of Contract are those homeowners who face foreclosure but qualify for a mortgage modification under HAMP.

66.     Hausam is eligible for a mortgage modification under HAMP because he meets the guidelines established by the U.S. Department of Treasur, which are as follows:

     a.     Defendant GMAC, the servicer of his mortgage and the affiliate of the original beneficiary HF, signed the Contract with the federal government.

     b.     The mortgage at issue in this case is on Hausam's primary residence, an owner-occupied, single unit house.

     c.     Due to financial hardship, Hausam had defaulted on his loan and is facing foreclosure.

     d.     Hausam's loan closed before January 1, 2009; it closed on June 19, 2007.

     e.     Hausam's loan is for less than $729,750; it is for $264,000.

     f.     Hausam's mortgage has not been previously modified under HAMP.

     g.     Hausam's mortgage debt-to-income ratio is over 31%.

67.     Therefore, Hausam is eligible for a HAMP modification because Hausam is an

Page 14 - COMPLAINT

intended third party donee beneficiary of the Contract between GMAC and the federal government.

68.    Neither the federal government nor GMAC explicitly provided that third party beneficiaries are not intended in this Contract. In fact, the Contract

69.    In order the effectuate the intention of the parties, as indicated by the Contract and surrounding circumstances of the Contract, the rights of third party donee beneficiaries under the Contract must be recognized.

70.    Hausam materially changed his position in justifiable reliance on the promise by negotiating an modification to his mortgage and relying on compliance with that modification to forebear foreclosure. The rights of Hausam as a third party beneficiary thereby vested.

71.    In addition, Hausam manifested assent to the Contract, and thereby vested his rights as a third party beneficiary, by contacting Defendants HF and/or GMAC to negotiate a HAMP mortgage modification and by acting in accordance with the terms of the Contract to qualify and be granted a modification.

72.    In accordance with the terms of the Contract between GMAC and the federal government, by taking TARP money, GMAC must modify mortgages of those eligible for modifications.

73.    As a third party donee beneficiary of the Contract, Hausam has the right against the promisor, Defendants GMAC and/or HF, to directly enforce the promise to promisee.

74.    Defendants GMAC and/or HF breached the Contract as alleged in paragraph 58.

75.    As a third party donee beneficiary of the Contract, Hausam has the right to claim injunctive relief for the breach of the Contract.

76.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

Page 15 - COMPLAINT

## THIRD CLAIM FOR RELIEF

### (Breach of Oral Contract)

77.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

78.    An offer was extended to Hausam on July 21, 2009 when the duly authorized agent of HF confirmed that Hausam qualified for a modified mortgage and orally offered to forebear foreclosure and reduce his mortgage payment to 31% of his monthly gross income, which was $1,311.92 including principal, interest, taxes, and insurance.

79.    Hausam orally accepted HF's offer to modify his mortgage to this reduced amount.

80.    An oral contract between Plaintiff Hausam and Defendant HF was thereby formed.

81.    Hausam understood that HF would send him paperwork to memorialize this modified mortgage under HAMP. Therefore, despite later receiving a Trustee's Notice of Sale on August 6, 2009, Hausam relied on the oral contract formed on July 21, 2009 to forebear foreclosure.

82.    Hausam relied on the oral contract by acting in accordance with the terms of the contract, i.e., paying the modified mortgage amount each month. Hausam also relied on the oral contract to forebear any foreclosure because he was complying with the trial period modification requirements.

83.    Hausam performed in reliance of the oral contract by acting under the contract by paying and/or attempting to pay the modified amount on four separate occasions between August 12, 2009 and October 13th, 2009. Letters sent by Hausam with the accompanying payments resulted from, and referred explicitly to, the terms of the oral contract entered into effecting this modification.

84.    Defendants HF and/or GMAC also acted in accordance with the oral agreement by accepting and cashing two of the mortgage payments for the modified amount without indication that $1,311.92 was not the correct amount.

Page 16 - COMPLAINT

85.     As a result of Plaintiff's part performance in reliance on the oral contract between Plaintiff and Defendants HF and/or GMAC, the oral contract should be removed from the Statute of Frauds.

86.     Therefore this mortgage modification is an enforceable contract..

87.     Defendants GMAC and/or HF breached the terms of the oral contract as alleged in paragraph 58.

88.     It would be wholly inequitable to allow GMAC and/or HF to avoid their obligation to perform under the contract, and to foreclose on Plaintiff's house, after permitting Plaintiff to perform in reliance on the agreement for months.

89.     Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## FOURTH CLAIM FOR RELIEF

### (Equitable Estoppel)

90.     The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

91.     Hausam and HF and/or GMAC formed an oral contract, that Hausam relied on to modify his mortgage and cancel any foreclosure, as alleged in paragraphs 78 through 83.

92.     Defendants HF and/or GMAC breached the terms of the oral contract as alleged in paragraph 58.

93.     Solely in reliance on the terms of the oral contract with HF, Hausam acted to his extreme detriment. Hausam submitted payments in the reduced amount of $1,311.92 from August 2009 until October 2009, believing these payments were his new monthly payment, which would forebear any foreclosure.

94.     It would therefore be wholly inequitable to allow Defendants to continue with a Trustee's sale and refuse to modify Plaintiff's mortgage in accordance with HAMP provisions.

**Law Office of Paul R.J. Connolly**
2731 12th Street SE | PO Box 3095
Salem, OR 97302
Ph: 503.585.2054 | Fax: 503.584.7037

95.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## FIFTH CLAIM FOR RELIEF

### (Promissory Estoppel)

96.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

97.    In the alternative, an oral promise was made by Defendants HF and/or GMAC to Plaintiff to reduce Plaintiff's mortgage payments and forebear foreclosure as alleged in paragraphs 78 through 80.

98.    Plaintiff, as promisee, acted in reliance on that promise by paying the reduced mortgage amount and complying with all other requirements of HAMP.

99.    Plaintiff, as promisee, in reliance on that promise, also refrained from acting on the pending foreclosure because he was complying with all requirements of HAMP.

100.    Defendants HF and/or GMAC should have reasonably expected that their promise to Plaintiff of a modified mortgage and no foreclosure would induce such action, i.e., Plaintiff acting in accordance with the terms of the promise and HAMP, and such forbearance, i.e., Plaintiff  refraining from other action to postpone or cancel the foreclosure in compliance with HAMP.

101.    As alleged in paragraph 93, Plaintiff has substantially changed his position as a result of the promise.

102.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## SIXTH CLAIM FOR RELIEF

### (Breach of Good Faith and Fair Dealing)

103.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

104.    The oral contract alleged in paragraphs 78 through 80, includes an implied

Page 18 - COMPLAINT

covenant of good faith and fair dealing.

105.    Defendants breached that covenant by engaging in acts that had the effect of destroying the right of Plaintiff to receive the fruits of the contract, specifically mortgage modification and foreclosure cancellation.

106.    In light of the reasonable expectations of Plaintiff that Defendants would not breach their Contract with the federal government, Defendants' conduct as alleged in paragraph 58 violated the covenant of good faith and fair dealing.

107.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## SEVENTH CLAIM FOR RELIEF

### (Accord and Satisfaction)

108.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

109.    As alleged in paragraphs 78 through 80, Defendants HF and/or GMAC have an agreement with Plaintiff to modify his mortgage to $1,311.92 per month and to stop the foreclosure proceeding.

110.    Defendants agreed to these terms as alleged in paragraphs 78 and 84.

111.    Plaintiff performed in accordance with the terms and conditions of the agreement, and HAMP provisions for a trial modification, as alleged in paragraph 83.

112.    Plaintiff continues to pay his monthly mortgage payment of $1,311.92 into a trust account since Defendant GMAC returned the last certified payment.

113.    Plaintiff thereby satisfied his duty to pay the modified monthly amount for three months trial period, and Defendants are required to provide Plaintiff with a permanent modified mortgage in the amount of $1,311.92, including principal, interest, insurance and taxes.

114.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable

Page 19 - COMPLAINT

remedies set for in paragraphs 61 through 62.

## EIGHTH CLAIM FOR RELIEF

### (Payment)

115.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

116.    Plaintiff has paid the monthly mortgage amount due in accordance with his modified mortgage agreement and HAMP, as alleged in paragraphs 78 through 83 and 111 though 113.

117.    Plaintiff remains ready, willing, and able to pay the modified mortgage amount of $1,311.92 as alleged in paragraphs 41.

118.    Plaintiff has therefore satisfied, and continues to satisfy, his obligation to pay his monthly mortgage amount, despite Defendant GMAC's return of his payment.

119.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## NINTH CLAIM FOR RELIEF

### (Unclean Hands)

120.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

121.    Defendants are attempting to foreclose on Plaintiff despite his eligibility, application, and approval of a mortgage modification under HAMP and his conduct in compliance with HAMP in breach of Defendants' Contract with the federal government and in breach of Defendants' oral contract with Plaintiff as alleged in paragraph 58.

122.    Defendants have thereby acted with unclean hands in both contracts, and should not be granted equitable relief.

123.    Plaintiff has no adequate remedy at law, and therefore seeks the equitable remedies set for in paragraphs 61 through 62.

/ / /

Page 20 - COMPLAINT

## TENTH CLAIM FOR RELIEF

### (Estoppel)

124.    The Plaintiff realleges and incorporates by reference paragraphs 1 through 44.

125.    The federal program HAMP was enacted to provide mortgage relief to struggling homeowners during a historic recession by providing financial incentives to banks, mortgage lenders and servicers like Defendants to modify mortgages rather than pursue foreclosures. The terms of the federal government's Contract with Defendants should be enforced in equity as applicable to Plaintiff.

126.    Plaintiff therefore seeks the equitable remedies set for in paragraphs 61 through 62.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff respectfully requests that the Court:

I.

Enjoin Defendants from directly or indirectly foreclosing on Plaintiff through a Trustee's sale.

II.

Reform and modify the Trust Deed and Promissory Note to reflect monthly payments of $1,311.92 in accordance with HAMP and to reflect a payment schedule of principal and interest in accordance with HAMP.

III.

The cancellation of all fees and costs related to the initiated foreclosure action.

IV.

An order that Defendants comply with all provisions of HAMP, federal law, and state law.

/ / /

Page 21 - COMPLAINT

V.

Grant such other and further relief as this Court may deem just, equitable, and necessary.


DATED this _____ day of December, 2009.


Respectfully submitted:


By___*/s/ Paul R.J. Connolly*_____
    Paul R.J. Connolly, OSB #844090
    Kevin J. Jacoby, OSB #063783
    Tyler P. Malstrom, OSB #094325
    Telephone: (503) 585-2054
    Of Attorneys for Plaintiff


Page 22 - COMPLAINT